UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RA SOUTHEAST LAND COMPANY LLC, | Case No. 2:14-cv-01621-MMD-NJK |
| Plaintiff, | ORDER |
| v. | (Defendant's Motion for Summary Judgment – ECF No. 22; |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | Plaintiff's Motion for Partial Summary Judgment – ECF No. 36; Plaintiff's Motion for Leave to File Additional Brief – ECF No. 55; |
| Defendant. | Defendant's Motion to Strike – ECF No. 57) |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | |
| Counterclaimant, | |
| v. | |
| RA SOUTHEAST LAND COMPANY, LLC, | |
| Counterdefendant. | |

I.    SUMMARY

Before the Court are cross motions for summary judgment from the parties in this dispute over the terms of an insurance contract. Defendant and counterclaimant First American Title Insurance Company ("First American") has filed a Motion for Summary Judgment. (ECF No. 22.) Plaintiff and counterdefendant RA Southeast Land Company, LLC ("RAS") has filed a Motion for Partial Summary Judgment. (ECF No. 36.) The Court

has reviewed the parties' respective responses (ECF Nos. 30, 38) and replies (ECF Nos. 35, 42). RAS has also filed a Motion for Leave to File a Supplemental Brief based on developments during discovery. (ECF No. 55.) First American filed a response opposing the additional briefing and a Motion to Strike (ECF. No. 57), and RAS filed a reply (ECF No. 58).

For the reasons discussed below, RAS's Motion to File a Supplemental Brief is granted, First American's Motion to Strike is denied, First American's Motion for Summary Judgment is granted, and RAS's Motion for Partial Summary Judgment is denied.

## II.   BACKGROUND

### A.   Factual Background

#### 1.   The Property

In 2010, RAS purchased a 23 acre parcel of land in Las Vegas, on which it planned to build a shopping center. (ECF No. 1 ¶ 21.) The property is situated among a number of parcels which have already been developed for retail and restaurant use. (*Id.* ¶ 10.) RAS bought the parcel with the understanding that the purchase also conveyed certain rights ("Declarant Rights") which would allow them to develop the land as they saw fit. (*Id.* ¶ 25.)

#### 2.   The Policy

RAS purchased a title insurance policy from First American in connection with its purchase of the land. The policy provides $11.75 million in coverage against loss or damage sustained by RAS for a number of reasons, including a defect in title or unmarketable title. (ECF No. 38-2 at 2, 6.) The policy also includes an endorsement which specifically deals with the Declarant Rights. The endorsement provides, in relevant part, that First American insures RAS against loss or damage resulting from the failure of the Declarant Rights.

/ / /

/ / /

### 3.    Litigation History

RAS acquired the property and Declarant Rights from a bank, which itself had acquired them through foreclosure on a defaulting borrower. In 2007, the original owner of both the property and the Declarant Rights, Charleston Associates LLC ("Charleston"), pledged the land as collateral for a loan from City National Bank ("CNB"). (ECF No. 1 ¶ 11.) Charleston defaulted on the loan and in 2009, First American conducted the trustee's sale. (*Id.* ¶¶ 12-15.) RAS then purchased the property from CNB. (*Id.* ¶ 21.)

Charleston, which had entered bankruptcy proceedings, sent RAS a letter shortly after RAS closed on the property indicating that Charleston believed it still owned the Declarant Rights. (*Id.* ¶¶ 17, 28.) First American began defending and indemnifying RAS in bankruptcy court, pursuant to the policy. (ECF No. 22 at 7.) The bankruptcy court declared Charleston retained the Declarant Rights due to an automatic bankruptcy stay. (*Id.* ¶ 33.) That decision was reversed by this Court. (*Id.* ¶ 38.) After the parties filed the pending cross motions for summary judgment, this Court's decision was affirmed by the Ninth Circuit. *See Charleston Associates, LLC v. City Nat. Bank*, 632 F. App'x 362, 363 (9th Cir. 2016). First American continued to provide RAS its legal defense throughout the proceedings.

### B.    Procedural Background

On September 1, 2014, RAS filed suit in this Court against First American, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and a violation of the Unfair Claims Settlement Act (NRS § 686A.310). RAS seeks declaratory relief, damages, attorneys' fees, interest and costs. (ECF No. 1.) First American, in turn, filed counterclaims seeking declaratory relief and rescission. (ECF No. 9 at 8.)

On July 30, 2015, First American filed a Motion for Summary Judgment seeking a ruling on all of RAS's claims. (ECF No. 22.) On September 25, 2015 RAS filed its own Motion for Partial Summary Judgment on its declaratory relief claim. (ECF No. 36.)

**III.    MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF**

RAS seeks leave to file a supplemental brief based on evidence produced during discovery and after both parties filed their respective summary judgment briefs. (ECF No. 55.) First American opposes RAS's motion and asks that RAS's proposed supplemental brief be stricken. (ECF No. 57.) First American largely argues the merits of the underlying brief, rather than the propriety of allowing RAS to file it.

LR 7-2(g) requires parties to acquire leave of court before filing supplemental briefs. A court may grant such a request for good cause. RAS has identified deposition testimony from a 30(b)(6) witness which it believes will aid the Court in resolving the contractual dispute in the cross motions for summary judgment. Good cause appearing, the Court grants RAS's motion and considers its attached brief in evaluating the cross motions for summary judgment. (ECF No. 55 at 10-17.) The Court will also consider the arguments presented in First American's response (ECF No. 57) and RAS's reply (ECF No. 58) in evaluating the new evidence and ruling on the cross motions for summary judgment.

**IV.    MOTIONS FOR SUMMARY JUDGMENT**

**A.    Legal Standard**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine

issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992) (citations omitted). "In fulfilling its duty to review each

cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

### B. Analysis

First American seeks summary judgment on all claims in RAS's complaint.[1] RAS seeks summary judgment only on its request for declaratory relief. The question this Court must resolve is whether, under the applicable Nevada law, First American satisfied its obligations by providing defense and ultimately prevailing in litigation over RAS's ownership of the Declarant Rights, or whether First American is also required to pay for any damages and loss RAS incurred while the litigation took place.

The parties dispute the import of an insurance policy. Under Nevada law, "[a]n insurance policy is a contract that must be enforced according to its terms to accomplish the intent of the parties." *Farmers Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003). When the facts are not in dispute, contract interpretation is a question of law. *Grand Hotel Gift Shop v. Granite State Ins. Co.*, 839 P.2d 599, 602 (Nev. 1992). The language of the insurance policy must be viewed "from the perspective of one not trained in law," and the court must "give plain and ordinary meaning to the terms." *Farmers Ins. Exch.*, 64 P.3d at 473 (internal quotation marks omitted). "Unambiguous provisions will not be rewritten; however, ambiguities are to be resolved in favor of the insured." *Id.* (footnote omitted); *see also Fed. Ins. Co. v. Am. Hardware Mut. Ins. Co.*, 184 P.3d 390, 392 (Nev. 2008) ("In the insurance context, we broadly interpret clauses providing coverage, to afford the insured the greatest possible coverage; correspondingly, clauses excluding coverage are interpreted narrowly against the insurer.") (internal quotation marks omitted); *Capitol Indemnity Corp. v. Wright*, 341 F.Supp.2d 1152, 1156 (D.Nev.2004) (noting that "a Nevada court will not increase an obligation to the insured where such

---

[1] As First American correctly notes in its reply, RAS's opposition does not contain any argument opposing First American's request for summary judgment on RAS's claims for breach of the implied covenant of good faith and fair dealing or violation of the unfair claims settlement act. (ECF No. 35 at 15.) Therefore, the Court will grant summary judgment on these claims. *See* LR 7-2(d).

was intentionally and unambiguously limited by the parties").

RAS's argument is based on the notion that the endorsement either 1) on its face promises to cover losses from impairment to the Declarant Rights during litigation; 2) is ambiguous and conflicts with the policy, and therefore must be interpreted against First American according to principals of insurance contract interpretation; or 3) RAS reasonably expected to be covered for losses while ownership of the Declarant Rights was being litigated. (ECF No. 36 at 16.) First American, in turn, argues that the terms of the agreement are unambiguous and it fulfilled its obligation to RAS by successfully defending RAS's ownership of the Declarant Rights. (ECF No. 22 at 25-27.)

### 1.    The Agreement

The relevant portions of the contract at issue consist of a standardized policy ("the Policy"); a schedule describing the specific property, parties, amount of insurance and premiums ("Schedule A"); and an endorsement which extends coverage to the Declarant Rights ("the Endorsement").

The Policy outlines the general agreement. It defines terms, explains the scope, lists exceptions, and details the way claims will be calculated and paid. Of particular importance to this case, subsection 9 of the Policy states:

> (a)    If the Company establishes the Title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.
> (b)    In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(ECF No. 38-2 at 4.)

/ / /

/ / /

7

Schedule A fills in some specific elements missing from the Policy. It sets the amount of insurance at $11.75 million, sets the premium at $11,868, and describes the specific land and title that are described in the Policy as "Title." (*Id.* at 6-7.)

The Endorsement is an addition to the standard policy for which RAS paid an additional premium. (ECF No. 1 ¶ 27.) It extends coverage to include not only the Title listed in the Policy and identified in Schedule A, but also the Declarant Rights associated with the property. Mimicking language from the Policy, the Endorsement "insures [RAS] against loss or damage actually sustained by [RAS] by reason of … [t]he failure of [the Declarant Rights]." (ECF No. 38-2 at 15.) The Endorsement goes on to state that "[i]mpairment, loss or failure of title to the Declarant Rights transferred to [RAS] is expressly excluded from coverage hereof if resulting from," three listed scenarios, which are inapplicable here. (*Id.*) The Endorsement concludes by stating that it does not "modify any of the terms and provisions of the policy," and is "subject to all of the terms and provision of the policy," but to the extent it is inconsistent with the policy, the Endorsement controls. (*Id.*)

## 2.    What the Endorsement Covers

The parties agree that the Endorsement extends the coverage under the Policy to include the failure of the Declarant Rights to have been transferred, but RAS believes that it expands coverage even further. According to RAS, the language in the Endorsement providing that "[i]mpairment, loss or failure of title to the Declarant Rights transferred to the Insured is expressly excluded from coverage hereof if resulting from [three listed reasons]," means that by "negative implication," impairment of the rights not caused by one of the enumerated exceptions must be covered. Therefore, argues RAS, First American is responsible for any impairment caused by the extensive litigation over ownership of the Declarant Rights.  (ECF No. 30 at 15-16.)

RAS additionally argues that subsection 9, which states that First American fully performs its obligations if it cures any defects in title through litigation, does not apply to the Declarant Rights. (ECF No. 30 at 21.) This is because, according to RAS,

subsection 9 of the Policy refers to "Title" (with a capital T) while the Endorsement refers to title (with a lower case t).

Neither argument is convincing. First, the fact that the Endorsement covers loss from "impairment" does not mean that subsection 9 of the Policy is inapplicable. RAS would have the Court read the word "impairment" to, by negative inference, rewrite the express method by which First American provides coverage and render subsection 9 either meaningless or contradictory. This is a creative but implausible reading. Subsection 9 describes how First American's coverage works. The subsection clearly indicates that in the event that First American "removes the alleged defect" through litigation, it is not responsible for "any loss or damage caused to the insured." (ECF No. 38-2 at 4.) In the Endorsement, subsection 9 applies to coverage First American provides due to "impairment, loss or failure of title to the Declarant Rights" the same way it applies in the Policy to any "defect in or lien or encumbrance on the Title." In other words, impairment of the Declarant Rights may trigger litigation on RAS's behalf, but First American by the express terms of the Policy is not responsible for further impairment caused by litigation to cure the original impairment.

Second, the differentiated use of "title" and "Title" does not mean that subsection 9 of the Policy is inapplicable. If it did, the Endorsement would be left largely meaningless. It is true that when used in the Policy "Title" refers to a specific, defined "estate or interest." (ECF No. 38-2 at 3.) It is also true that First American refers to both "Title" and "title" in the Policy to refer to slightly different things. (*Id.* at 2.) But it does not follow that the use of the term "title" in the Endorsement must be understood to jettison large portions of the Policy. If it did, much of the Policy, including many material provisions, would be inapplicable to the Endorsement. The Endorsement itself is short. It does not contain, for example, any provision describing its own duration. Nor does it contain a provision describing how the extent of liability will be determined. This is because it expressly relies on the Policy, where these factors and many others are set out. The provisions in the Policy regarding the duration of the agreement and the means

9

for determining liability, for example, specifically refer to "Title." (See ECF No. 38-2 at 3 (subsection 2 of the Policy) and 4 (subsection 8 of the Policy)). If the Court were to adopt RAS's proposed interpretation, the Endorsement would be littered with gaps. The only plausible understanding of the Endorsement is that it is subject to subsection 9 of the Policy. This understanding is further supported by clear language in the Endorsement indicating that it is "issued as part of the policy" and "subject to all of the terms and provisions of the policy." (*Id.* at 15.)

### 3.   Ambiguity

For the reasons above, the Court finds that the language of the Endorsement and the Policy are unambiguous. Therefore, RAS cannot rely on the reasonable expectations doctrine. *See Farmers Ins. Exch. v. Young*, P.2d 376, 379 n. 3 (Nev. 1992) ("[a]bsent the finding of an ambiguity in the policy, the reasonable expectations doctrine does not help" an insured."). Additionally, the parol evidence obtained by RAS and submitted with leave of the Court is inapposite. *Ringle v. Bruton*, 86 P.3d 1032, 1037 (Nev. 2004) ("The parol evidence rule does not permit the admission of evidence that would change the contract terms when the terms of a written agreement are clear, definite, and unambiguous.").

## V.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion because they do not affect the outcome of the parties' motions.

It is therefore ordered that RAS's Motion for Leave to File a Supplemental Brief (ECF No. 55) is granted.

It is further ordered that First American's Motion to Strike (ECF No. 57) is denied.

It is further ordered that RAS's Motion for Partial Summary Judgment (ECF No. 36) is denied.

/ / /

It is further ordered that First American's Motion for Summary Judgment (ECF No. 22) is granted.

The Clerk is directed to enter judgment in favor of First American on the claims alleged in Plaintiff RAS's Complaint in accordance with this Order.

DATED THIS 1st day of September 2016.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE